IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BELINDA A. GOULART,

Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

3:12-cv-00427 RE

**OPINION AND ORDER**

REDDEN, Judge:

Plaintiff Belinda Goulart ("Goulart") brings this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits ("DIB"). For the reasons set forth below, the decision of the Commissioner is affirmed and this matter is dismissed.

/ / /

1 - OPINION AND ORDER

## BACKGROUND

Goulart was born in 1968, and filed her application for DIB in January 2008. She has a high school education, and past relevant work experience as a newspaper deliverer and pharmacy technician. Tr. 21, 160-61. Tr. 172, 174. Goulart alleges disability since December 31, 2006, due to a brain aneurysm, a laughing disorder, diabetes, back pain, manic depression, fibromyalgia, migraines, sciatic nerve pain, and tailbone pain. Tr. 137. Her application was denied initially and upon reconsideration. A hearing was held in July 2010. The Administrative Law Judge ("ALJ") found her not disabled. Goulart's request for review was denied, making the ALJ's decision the final decision of the Commissioner.

Goulart's insured status for DIB expired on December 31, 2007. Tr. 15, 146. Thus, the relevant period under consideration is from December 31, 2006, Goulart's amended onset date, through December 31, 2007, the date Goulart was last insured for DIB.

## ALJ's DECISION

The ALJ found Goulart had the medically determinable severe impairments of depressive disorder, laugh syncope, fibromyalgia, migraines, and obesity. Tr. 15-16.

The ALJ found that Goulart's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. *Id.*

The ALJ determined that Goulart retained the residual functional capacity ("RFC") to perform light work that does not require her to climb, to work in concentrated exposure to environmental irritants, or to work around workplace hazards. Tr. 17. The ALJ also found that Goulart could perform unskilled work that requires no more than occasional public contact. *Id.* Goulart disputes this finding.

The ALJ found Goulart could not perform her past relevant work as a newspaper deliverer or pharmacy technician. Tr. 21-22.

The ALJ found that there was other work existing in significant numbers in the national economy that Goulart could perform. Tr. 22-23. Accordingly, the ALJ found Goulart not disabled. Tr. 23.

## DISCUSSION

Goulart contends that the ALJ erred by improperly rejecting the opinions of treating providers and lay witnesses.

### I. Medical Evidence

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* But, if two medical source opinions conflict, an ALJ need only give "specific and legitimate reasons" for discrediting one opinion in favor of another. *Id.* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

### A. Jan Benson, Psy. D.

Dr. Benson began treating Goulart for depression in April 2008. Tr. 521-26. The medical records indicate that she saw Goulart approximately once a month through November 2008. Tr. 512-21. At intake, Goulart reported that her pain is eight out of ten most of the time.

3 - OPINION AND ORDER

She reported having had a lot of counseling, feeling overwhelmed, and "really struggling with 18 year old daughter." Tr. 521. Dr. Benson noted that Goulart was disheveled, agitated, sad, depressed, with circumstantial thought processes. Tr. 522. She was fully oriented with intact judgment and insight. Dr. Benson diagnosed depression and pain disorder, noting problems with the primary support group as "conflicted relationship with daughter," assessing a GAF of 53. Goulart reported a long history of depression, trauma and abuse, and Dr. Benson described her as hopeless, over-whelmed, and feeling unable to cope. Tr. 523. She was taking Wellbuton and Zoloft. Treatment goals were mood and anxiety management.

Dr. Benson's notes from May 30, 2008, indicate a depressed mood, and tension in the home regarding a daughter's return home. Tr. 520. Dr. Benson noted no sleep, headache, loss of appetite, "fibromyalgia is off the charts," and an "emotional roller coaster." *Id.*

On June 9, 2008, Dr. Benson noted that Goulart as well as her daughter attended the session. Tr. 519. Dr. Benson checked boxes indicating depressed mood, agitation/irritability, fatigue, sleep problems, low self esteem/guilt and physical pain. Tr. 519. She noted there was a lot of tension between the parties and anger, and that Goulart had difficulty moderating emotions. *Id.*

On June 30, 2008, Goulart described ongoing problems with her daughter. Tr. 518. She had a letter from her husband outlining his concerns. Goulart reported a lot of pain, not helped by current pain medications, in her back, hands and ankle.

On July 22, 2008, Dr. Benson checked boxes indicating depressed mood, agitation/irritability, fatigue, low self esteem/guilt, and physical pain. Tr. 517. Goulart was

"really struggling" with her daughter, and feeling sick and in pain most of the time. Dr. Benson discussed setting limits, and Goulart reported a recurring nightmare.

On August 8, 2008, Dr. Benson checked boxes indicating depressed mood, fatigue, anxiety/worry, and physical pain. Tr. 516. Goulart's daughter was present, and they discussed problems with the "other daughter," and respect. Dr. Benson noted that the daughter has a history of abuse, "but other daughter is also claiming abuse hx, seems to parallel own experiences. not sure if anything is really true." *Id.* Goulart expressed concern that she may have had a mild stroke.

On September 8, 2008, Goulart's husband accompanied her to the counseling session. Tr. 515. Dr. Benson checked boxes for depressed mood, agitation/irritability, fatigue, and physical pain. Mr. Goulart was concerned about stability in the home and his wife's mood swings. Dr. Benson noted that Goulart was "full of rage. Any irritation rapidly escalates. Hard time de-escalating and self-regulating." *Id.* She noted that Goulart had been denied social security disability, and should practice reducing conflicts in the home.

On September 26, 2008, Dr. Benson checked a box indicating physical pain. Tr. 514. Mr. Goulart attended the session. Goulart reported some improvement at home, though she was worried about depression, suicidal ideation, and emotional stability. Her migraines and back pain were "out of control," she had a laugh syncope, and she "dwells on everything that's wrong with her." *Id.*

On October 21, 2008, Dr. Benson checked a box indicating depressed mood. Tr. 513. Goulart was "expressing a lot of pain," and described a childhood of physical and verbal abuse.

5 - OPINION AND ORDER

*Id.* Goulart described a good relationship with her step-mother, but she was abandoned by her father.

The final progress note in the record is dated November 26, 2008. Tr. 512. Dr. Benson checked off depressed mood, agitation/irritability, fatigue, low self esteem/guilt, and physical pain. Goulart reported a good response from Xanax, and felt "more even-keeled." *Id.* She reported problems with both daughters and communication issues with her husband.

In June 2010, Dr. Benson completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental), and found that Goulart was "moderately" limited in her ability to "carry out complex instructions," and to " interact appropriately with the public." Tr. 585-86. "Moderately" is defined as "more than a slight limitation in this area but the individual is still able to function satisfactorily." Tr. 585.

Dr. Benson indicated that Goulart was "markedly" impaired in the "ability to make judgments on complex work-related decisions," the ability to "interact appropriately" with supervisors and co-workers, and the ability to "[r]espond appropriately to usual work situations and to changes in a routine work setting." Tr. 585-86. "Markedly" is defined as a "serious limitation in this area. There is a substantial loss in the ability to effectively function." *Id.* Dr. Benson opined that all of these limitations had been present since "at least 2006." She stated that Goulart's judgment is compromised by mood and anxiety symptoms, and that she is somewhat impulsive, reacting before thinking through the consequences. Tr. 585. Dr. Benson stated that agitation, irritability, and low frustration tolerance impact Goulart's social interactions, and that chronic pain and fatigue lead to inconsistent pace and persistence. Tr. 586.

///

The ALJ noted Dr. Benson's opinion and said:

> I gave Dr. Benson's opinion little weight because his treatment notes do not support the severity of the limitations she opined. Though the doctor's progress notes reflect the claimant had many emotional problems with her daughters, they do not indicate she was as limited as he opined in the assessment [citation omitted]. Lastly, his opinions are not in accordance with the claimant's activities of daily living or the medical evidence as a whole.

Tr. 20.

The ALJ correctly noted that Dr. Benson's treatment notes do not reflect the functional limitations that she described in the June 2010 form. The fact that Dr. Benson's opinion was offered nineteen months after she last saw Goulart, and two and a half years after Goulart's insurance expired, coupled with other contradictory medical evidence as described below, fully supports the ALJ's determination that Dr. Benson's assessment was not convincing. In addition, Goulart reported in her application materials that she cleaned her apartment, prepared meals, did laundry, washed the dishes, made the bed, and takes care of her husband and daughter. Tr. 181-82. She cares for her personal hygiene, drives, goes out alone, and shops for groceries. Tr. 183-84. She stated that she has no trouble getting along with other people or responding to authority figures, in direct contradiction of Dr. Benson's assessment that she is markedly limited in her ability to interact appropriately with supervisors and co-workers. Tr. 186. The ALJ's determination to give Dr. Benson's June 2010 assessment little weight is supported by substantial evidence.

## B. E. Daniel Crawford, M.D.

Dr. Crawford began treating Goulart in April 2004. Tr. 571.

On July 1, 2006, Dr. Crawford recorded complaints of moodiness with rapid cycling. Tr. 398. Goulart had "no desire to be around people," and had trouble sleeping. Cymbalta was prescribed.

On July 24, 2006, Gaulart had numbness in the last two fingers of her left hand. Tr. 398. Her mood was "much improved." *Id.*

In August 2006, her "main complaint is low back pain radiating to her back into both legs. Bothersome mostly when she has to stand on her feet working. She works folding and delivering newspapers....Overall the Cymbalta has helped her symptoms considerably." Tr. 397. She was tender to even light touch over her lower spine.

On September 22, 2006, Dr. Crawford noted she was frustrated about her inability to lose weight, and had eczema of the left elbow with secondary infection. Tr. 396.

On November 3, 2006, Goulart reported that her depression was "slightly worse." Tr. 395. Cymbalta was increased.

Goulart contends that she became disabled as of December 31, 2006.

In March 2007, Goulart reported that she had quit taking Cymbalta because it made her vomit. Tr. 394. Her depression was worse, and she was discouraged about her seizure disorder. Dr. Crawford prescribed Wellbutrin and Zoloft.

On April 4, 2007, Goulart reported feeling "much better, but feels like she is not quite where she wants to be and wonders about increasing Zoloft." Tr. 393. She continued to have back pain and myalgias. Dr. Crawford increased the Zoloft.

In May 2007, Goulart's "main complaint ...is frequent falling. She is falling every week or so. She states she was just walking along and her legs become weak and she falls." Tr. 392.

8 - OPINION AND ORDER

Dr. Crawford wrote that she continued to "complain bitterly of low back pain that makes it very difficulty [sic] to stand or sit for prolonged periods." *Id.* Dr. Crawford noted that the back pain appeared to be getting worse, but that Goulart's low back was nontender to palpation, she had no pain with range of motion and walked normally. Dr. Crawford stated that she was able to stand on her heals [sic] and toes with some difficulty, mainly because of her obesity. He concluded "[l]ow back pain with leg weakness, etiology unclear." *Id.* He noted that depression was stable.

On June 4, 2007, Goulart's "main complaint continues to be low back pain with leg weakness." Tr. 391. She reported falling several times, and that she could walk about 100 yards before her legs became weak. Dr. Crawford ordered an MRI of the spine to rule out spinal stenosis. It showed some degenerative changes, "but nothing extreme." Tr. 390.

On June 29, 2007, Goulart reported "lots of pain in her low back." *Id.* She was referred to physical therapy.

On July 27, 2007, after physical therapy, Goulart reported a sharp increase in back and hip pain. Tr. 389. Vicodin and Flexeril were prescribed. On July 30, Dr. Crawford noted low back pain with left leg radiculopathy. Goulart was limping. Vicodin and Flexeril were refilled.

In August 2007, Dr. Crawford noted that the pain was better but not resolved. Tr. 387. He noted that she "moves much better than she did two weeks ago." *Id.* Gaulart reported " a lot of stress" with a problem with her daughter. Dr. Crawford increased Zoloft and refilled Vicodin and Flexeril.

In September 2007, Goulart reported her back pain was better, as was the stress at home. Tr. 546. On October 17, Goulart saw Dr. Crawford for a head cold, and reported that her "back is getting better slowly." Tr. 546.

Goulart's date last insured, and the date by which she must establish disability, is December 31, 2007.

Dr. Crawford continued to treat Goulart through at least March 2009. In January 2009 Dr. Crawford wrote:

> Ms. Goulart carries the diagnoses of major depression, type 2 diabetes, hypertension, hyperlipidemia, fibromyalgia, chronic back pain, and laugh syncope. She has recently been seen by Dr. Stephen Campbell, rheumatologist, who confirmed the diagnosis of fibromyalgia. In the past, she has been seen by two neurologists...who confirmed the diagnosis of laugh syncope. She is currently on multiple medications for control of her symptoms. I started seeing the patient in April of 2004 and she had many of these symptoms before that time and, in my opinion, has been disabled since at least June of 2004.

Tr. 572.

In May 2010, Dr. Crawford wrote:

> She currently has 3-4 migraine headaches per month, often lasting as much as 3-4 days each time. She has constant muscle and joint pain secondary to fibromyalgia. She has constant stress from her depression. Her syncopal episodes are hard to predict because of their association with laughing. Her chronic back pain, exacerbated by her weight, also affects her ability to work.
>
> All of these chronic conditions make it very difficult for her to hold down a regular job despite treatment with medication. I believe that she has been disabled because of these conditions for many years.

Tr. 581.

The ALJ noted Dr. Crawford's opinion and conclusion, and noted that it was not supported by his treatment notes, specifically citing the May 2007 note that Goulart's depression was stable. Tr. 21. Dr. Crawford's treatment notes, set out above, contradict his assertion that Goulart was so functionally limited as to be unable to perform work activity prior to her date last

insured. This is a clear and convincing reason for the ALJ to reject Dr. Crawford's opinion. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

In addition, the ALJ noted that Dr. Crawford's assertion was contradicted by the fact that Goulart did some work in both 2006 and 2007. Tr. 21, 154. The ALJ properly cited Goulart's activities of daily living, as set out above, and the medical record as a whole. The ALJ's rejection of Dr. Crawford's conclusions is supported by substantial evidence.

## II. Lay Testimony

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. § 404.1513(d); 404.1545(a)(3); 416.945(a)(3); 416.913(d); *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala,* 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir. 1996). However, inconsistency with the medical evidence may constitute a germane reason. *Lewis,* 236 F.3d at 512. The ALJ may also reject lay testimony predicated upon the testimony of a claimant properly found not credible. *Valentine v. Astrue,* 574 F.3d 685, 694 (9th Cir. 2009).

Goulart contends that the ALJ improperly considered the lay witness statements of her husband and mother-in-law.

### A. Michael Goulart

In July 2010, Mr. Goulart submitted a statement in which he says that his wife worked with him on a paper route between November 2005 and May 2006, during which time she helped

by driving. Tr. 241. Mr. Goulart states that his wife's health "was so limiting that she was unable to handle the physical strain of delivery." *Id.* Mr. Goulart asserts that his wife's back, legs, and knees made it impossible for her to do any of the actual handling and delivery of the papers. He states that Goulart's migraines made it impossible for her to remember the addresses and apartment numbers. Mr. Goulart states that his wife was unable to help him stuff, fold and bag the papers. Mr. Goulart notes that his wife has not worked since May 2006, and that the newspaper route should have been in his name instead of hers.

He states that his wife is in constant back pain, and is not allowed to lift anything heavy, and that she has migraines that can last for days. Tr. 243. Mr. Goulart notes that his wife has a laugh syncope, and she is depressed and moody, with anxiety and panic attacks. Tr. 244.

Mr. Goulart's July 2010 statement was apparently not submitted to or seen by the ALJ. However, Mr. Goulart's statements are predicated upon the statements of his wife, which the ALJ found not credible to the extent that they assert limitations in excess of those described in Goulart's Residual Functional Capacity assessment. Tr. 18. Goulart does not argue that that finding is in error. Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it is harmless error for the ALJ to fail to discuss the lay witness testimony. *Molina v. Astrue,* 674 F.3d 1104, 1114 (9th Cir. 2012).

Mr. Goulart also submitted a seizure questionnaire, dated April 2008, in which he indicates that Goulart's seizures occur after heavy laughter, and result in her being disoriented and angry. Tr. 21, 225-28.

///

## B. Darlene Ann Huckaby

Goulart's mother-in-law, Ms. Huckaby, completed a Third Party Function Report in May 2008. Tr. 189-96. She noted that she does not spend much time with Goulart now "but before a lot." Tr. 189. Ms. Huckaby stated that Goulart was able to care for her cats, shop for groceries, clothes and household items, care for her personal hygiene, help prepare meals, perform some cleaning tasks, walk, drive, handle money and bank accounts, socialize, and follow instructions. Ms. Huckaby stated that Goulart needs reminders to take her medication, does no vacuuming and no more than two loads of laundry a day, and does puzzles, reading, sewing. She works on the computer and watches television. Tr. 193. Ms. Huckaby noted that pain and depression prevent Goulart from socializing.

The ALJ noted the seizure questionnaire and Ms. Huckaby's report and said that "because these parties have a personal relationship with the claimant and lack the expertise and possibly the motivation to offer an objective or functional assessment, their statements regarding the claimant's symptoms and limitations are considered with caution." Tr. 21. Again, Ms. Huckaby's report does not describe any limitations not described by the claimant, which were properly discredited. The ALJ properly weighed the lay testimony.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

13 - OPINION AND ORDER

## CONCLUSION

For these reasons, the ALJ's decision that Goulart was not disabled as of December 31, 2007, her date last insured, is based on correct legal standards and supported by substantial evidence. The decision of the Commissioner is affirmed.

IT IS SO ORDERED.

Dated this 19 day of February, 2013.

JAMES A. REDDEN
United States District Judge